UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward M. BENAVIDES,
Defendant-Appellant.

No. 85–2652
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 20, 1986.

Eduardo M. Benavides pro-se.

Dale Wilson, San Antonio, Tex. (Court appointed), for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Michael R. Hardy, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Benavides, convicted on his unconditional guilty plea of one count of presenting false information to the Department of Health and Human Services for the purpose of fraudulently obtaining a social security number card in violation of 42 U.S.C. § 408(f), appeals, claiming that the district court erred in denying his presentence motion to withdraw his guilty plea and in denying his motion to suppress evidence. These contentions are wholly unrelated. Finding no merit in either, we affirm.

### Facts and Proceedings Below

The indictment in this case was returned in early October 1984 and charged Benavides in two counts with presenting false information, on each of two different occasions, to the Department of Health and Human Services for the purpose of fraudulently obtaining a social security number card in violation of 42 U.S.C. § 408(f). On October 17, 1984, the Public Defender was appointed to represent Benavides. In early November 1984, Benavides' counsel filed several motions in the case, including a motion to suppress a social security card, apparently that procured by the false information submitted to the Department of Health and Human Services as alleged in at least one of the counts in the indictment, the card having been taken from Benavides' wallet in the course of his being lawfully booked at the Bexar County, Texas jail pursuant to a concededly proper arrest on a parole violator warrant. The district court denied the motion to suppress by order entered November 16, 1984, rely-

ing on *United States v. Castro,* 596 F.2d 674, 677 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979).

Thereafter, several motions for continuance were made and granted, and there was plea bargaining between the prosecution and the defense.

On March 8, 1985, defense counsel wrote the court advising that a plea agreement had been reached under which defendant agreed to plead guilty to one count of the indictment, with the government agreeing to move at sentencing for dismissal of the other count and agreeing not to oppose defendant's anticipated request to the court that the court recommend to the Bureau of Prisons that any sentence of confinement be served in the Texas Department of Corrections where defendant was serving sentence pursuant to a state conviction, defendant acknowleding that if the court made such a recommendation it would not be binding on the Bureau of Prisons. Copies of the letter were sent to the Assistant United States Attorney and defendant.

On March 15, defendant, through counsel, moved for a continuance, alleging that defendant required "additional time in which to resolve a dispute with the United States Parole Commission before making a decision as to the proper plea to enter in this case." The motion also alleged that *if* defendant decided to plead not guilty, the Public Defender "would have a conflict which would prevent his trying the case," the conflict not being specified, and additional time would be needed for substitute counsel to be appointed and to prepare for a contested trial. It was indicated that defendant would make up his mind by April 19, and a continuance was sought to May 13. On March 18, the court granted the motion for continuance and set the case for trial for May 14. On April 19, the Public Defender, as Benavides' counsel, wrote the court, with copy to Benavides, that substitute counsel would be required, and that "Mr. Benavides informed me that he cannot make a decision concerning his plea of guilty until he receives the medical attention which he has requested." That same

day, substitute counsel, not connected with the Public Defender's Office, was appointed to represent Benavides.

Sometime thereafter, Benavides and his new counsel apparently elected to plead guilty pursuant to the above-indicated plea bargain, and on May 13, 1985, Benavides and his counsel and the Assistant United States Attorney appeared before the district court for a lengthy Rule 11, Federal Rules of Criminal Procedure, hearing, the transcript of which is approximately thirty pages. At the conclusion of this hearing, Benavides' plea of guilty, pursuant to the mentioned plea agreement with the government, was accepted and Benavides was found guilty pursuant thereto. Thereafter, a sentencing hearing was set for August 5.

At the August 5 sentencing hearing, Benavides' counsel commenced by raising some concerns about the pre-sentence investigation report, particularly portions thereof that referred to previous arrests or convictions, the records of which apparently had been expunged by a state court order. The district judge explained that he had already examined the pre-sentence report and had decided not to give any consideration to those matters. Concern also was expressed by Benavides' counsel because the district court had apparently entered an order authorizing the probation office to procure the expunged records from the state district court.

Then, some fifteen pages into the transcript of the August 5 sentencing hearing, Benavides' counsel stated that Benavides wished to withdraw his plea of guilty "because of medical problems that he had at the time of the plea." The court then ascertained from the Assistant United States Attorney that she had no previous notice that Benavides would be requesting to withdraw his plea. Benavides' counsel then explained that during previous discussions which he and Benavides had had with the probation officer concerning the proposed pre-sentence report, which were later shown to have occurred on July 12, 1985, Benavides had indicated that he might want to withdraw his plea if a satisfactory

solution were not reached to the question of whether or how the expunged previous arrests or convictions would be referred to in the pre-sentence report. Counsel related that he had then told Benavides to inform him, in writing, if he wanted to withdraw his plea so that counsel could make appropriate motions. Counsel did not hear from Benavides, "but this morning, he tells me that he is insistent upon withdrawing the plea. The basis for it is not the expungement of what we discussed. It is the fact that I was not aware of it at the time." The United States opposed the motion to withdraw. The court granted defendant leave to file written motion to withdraw, and directed that if such a motion were filed a hearing would be had.

On August 8, defendant, through his counsel, filed a motion to withdraw his guilty plea, alleging, as the sole ground therefor, that he had been taking medication, Elavil, during the approximately two weeks just prior to his plea of guilty and "he does not feel the plea of guilty on May 13, 1985, was in his best interest and because he was taking medication for his headaches, he would like to withdraw his plea of guilty and enter a plea of not-guilty." There was no allegation that defendant was innocent.

The government, on August 22, filed a motion in opposition to the motion to withdraw the guilty plea, pointing out, among other things, that defendant did not claim he was innocent and that the May 13 guilty plea hearing demonstrated that the plea was knowing and voluntary and that defendant was guilty. The government also asserted that its information was that defendant had been taking on some occasions since April 19, twenty-five milligrams a day of Elavil, which was one-third of the recommended dosage for outpatients, and one-sixth of the maximum outpatient dosage, according to the *Physician's Desk Reference.* The government admitted it would not be prejudiced.

An evidentiary hearing was held on the motion to withdraw on September 6. Benavides testified under oath that his taking

Elavil and its apparent side effects on him were the only reason that he was seeking to withdraw his guilty plea. He at no time maintained his innocence. He testified that the Elavil gave him feelings of depression and intimidation, that he could not think rationally because of it, and that it made him irritated at things and paranoid. He stated that Elavil was prescribed for him on April 19 at twenty-five milligrams a day, and that he thereafter took the medication intermittently through May 12, but did not take it thereafter. He went back to the doctor on May 31, complaining of side effects, and was then switched to another medication which he took for about a week. He claimed he took the Elavil on May 10, 11, and 12, did not remember whether he took it on May 9, and did not take it on May 13 or thereafter. Testimony from the physician's assistant at the Bastrop F.C.I., where Benavides was incarcerated, indicated that a strict record and control of the dispensing of such medication was maintained there, and that the F.C.I. records, which were introduced in evidence, reflected that Benavides took the medication on the first through the fourth of May, did not take any on the fifth, sixth, or seventh, took it on the eighth, and thereafter did not take it again until 8:00 p.m. on May 13, in each case at twenty-five milligrams.

Benavides testified that he was completely rational and in possession of all his faculties at the September 6 hearing. The Assistant United States Attorney, who was present throughout the entire September 6 hearing, and the May 13 guilty plea hearing, testified that she conferred with Benavides and his counsel, off the record, during the guilty plea hearing, and that during the guilty plea hearing he appeared and acted at all times in full possession of his mental faculties and appeared and acted no differently than at the September 6 hearing. The transcript of the May 13 guilty plea hearing was introduced in evidence.

The district court, the same judge who had presided at the guilty plea hearing, the August 5 hearing, and the September 6 hearing, and who also presided at the sub-

sequent September 11 sentencing, and was in charge of the case throughout, denied the motion to withdraw.

The court found that, as testified to by the Assistant United States Attorney and in accordance with the court's own observations, the appearance and demeanor of Benavides were no different on September 6 than they were on May 13, and on each occasion he appeared in full possession of his faculties; the court specifically found that defendant did not take the drug after May 8, until the evening of May 13, after the guilty plea hearing. The court found further that defendant's May 13 plea was in fact knowledgeable, knowing, and freely and voluntarily given, and that defendant was not under any intimidation, force, or coercion. The court stated that the plea was a knowing, intentional, knowledgeable, and voluntary plea, and that there was sufficient factual basis for it.

Sentencing was set for September 11. During the sentencing proceedings, the court made reference to the pre-sentence investigation report reflecting that on July 12, defendant and his attorney met with his probation officer and that defendant threatened to withdraw his plea due to dissatisfaction with the way the probation officer planned to refer to defendant's prior criminal record in the pre-sentence investigation report. This was acknowledged by defendant. Defendant also acknowledged that "he pretty well committed the offense." Pursuant to the plea agreement, the other count of the indictment was dismissed on motion of the government. Defendant was sentenced to three years' confinement, with provision for the applicability of 18 U.S.C. § 4205(b)(2), and the confinement to be consecutive to the state sentence.

## Discussion

### Guilty Plea Withdrawal

Benavides contends the district court abused its discretion by denying his motion to withdraw his guilty plea before sentencing. First, Benavides appears to be arguing that withdrawal of a guilty plea should be allowed as a matter of course prior to sentencing where the government has failed to show its case would be prejudiced. Here, the government has admitted it would not be prejudiced. Second, Benavides claims that at the time of his plea he had been taking Elavil, a medication that caused paranoia and otherwise impaired his mental faculties, and this rendered his plea unknowing and involuntary. Benavides' first argument is not an accurate statement of the law of this Circuit, and his second argument is foreclosed by the district court's factual findings.

Where a defendant moves to withdraw a guilty plea before sentencing, "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Fed.R.Crim.P. 32(d) (*codifying the standard of Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927)). Though Rule 32 is to be construed and applied liberally, *United States v. Rodriguez-DeMaya*, 674 F.2d 1122, 1128 (5th Cir.1982), there is no absolute right to withdraw a guilty plea. *United States v. Davila*, 698 F.2d 715, 721 (5th Cir.1983). A motion to withdraw a guilty plea is committed to the discretion of the district court and its decision will not be disturbed absent an abuse of discretion. *Id.*; *United States v. Carr*, 740 F.2d 339, 344 (5th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). This is so even where there is no prejudice to the government. *United States v. Rasmussen*, 642 F.2d 165 (5th Cir.1981). The defendant has the burden of establishing a reason for the withdrawal of the plea and that withdrawal is "fair and just." *United States v. Carr*, 740 F.2d at 343–44.

In *United States v. Carr*, this Court suggested several factors that a court should consider when a defendant moves to withdraw a guilty plea. The *Carr* factors relevant in the present case include: whether the defendant has asserted his innocence; whether the government would be prejudiced; whether the defendant has delayed in filing his withdrawal motion; whether withdrawal would substantially inconvenience the court or waste judicial re-

sources; whether close assistance of counsel was available in connection with the former plea; and whether the original plea was knowing and voluntary. 740 F.2d at 343–44.

■ Benavides confessed to the crime at the plea hearing and he does not claim the contrary on appeal. Benavides contends that withdrawal of the plea should be allowed because the government conceded that it would not be prejudiced by pre-sentence withdrawal. However, this Court has held that the absence of a showing of prejudice by the government is not sufficient to require withdrawal of the plea where "no credible reason is proffered." *United States v. Rasmussen*, 642 F.2d at 168 n. 6. *See also United States v. Carr*, 740 F.2d at 345. The Advisory Committee notes to the 1983 amendments to Rule 32(d) expressly reflect that a deliberate choice was made, in drafting amended Rule 32(d), to follow the rationale of *United States v. Saft*, 558 F.2d 1073 (2d Cir.1977), understood to be "that there is no occasion to inquire into the matter of prejudice unless the defendant first shows a good reason for being allowed to withdraw his plea," in preference to the view expressed in *United States v. Savage*, 561 F.2d 554 (4th Cir. 1977), that pre-sentence motions to withdraw should be granted almost automatically where the government would not be prejudiced.

At and long before his arraignment, Benavides had close assistance of counsel and his plea was knowing and voluntary. Before entering his plea, Benavides stated that he understood the charges and the penalty. He affirmed that he was of sound mind, that he understood the proceedings and that he was entering his plea of guilty because he was guilty and for no other reason. His counsel likewise affirmed each of these matters, including specifically the fact that he had no "cause to doubt the mental competency of" Benavides. Benavides admitted the specific acts set out in the government's outline of proof, which showed his guilt, and further admitted that the government could prove those facts.

Under questioning by the court, he admitted each of the elements of the offense. His rights were thoroughly explained, and he made clear that his plea was entirely knowing and voluntary, which was confirmed by his counsel. The requirements of Rule 11 were fully met, and indeed well exceeded.

■ Benavides testified at the September 6 hearing that Elavil made him "intimidated," "depressed," "irritated," and "paranoid." According to Benavides, the last time he took the medication was May 12, the day before his plea hearing, and that the plea was not an act of his free will. However, a physician's assistant at the Bastrop F.C.I., where Benavides was incarcerated before and after the plea hearing, testified that according to the F.C.I. records admitted in evidence, Benavides had last taken Elavil on May 8, before his plea hearing on May 13. The Assistant United States Attorney, representing the government at the plea hearing, later testified that she did not notice any change in Benavides' demeanor between the plea hearing and the evidentiary hearing, and did not observe anything to bring into question Benavides' competence, despite full opportunity to observe him closely.

There was no corroboration of Benavides' claims as to the effect of the Elavil on him. He also admitted that he told the doctor on May 31 that he had only taken the Elavil once.

The district court found that Benavides' demeanor was the same at both the plea and motion hearings. The court also found that the last time Benavides took Elavil prior to the plea hearing was on May 8. Because Benavides was prescribed Elavil on a daily basis, the district court could reasonably infer that whatever side effects Benavides was suffering from, if any, would have worn off during this four-day span. The district court concluded that Benavides' plea was knowing and voluntary.

We also observe that Benavides presented no good reason for his lengthy delay in moving to withdraw his guilty plea. As we

said in *Carr,* "[T]he longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer," while "[c]onversely, a prompt withdrawal may indicate that a plea was unknowingly entered in haste." 740 F.2d at 344. Moreover, Benavides had long had close assistance of counsel, from October 1984 to May 1985, when he pleaded guilty, and obviously the plea was not entered unknowingly or in haste, but only after several motions were ruled on and the matter had been long under consideration. And, the course of the proceedings leads to the strong suspicion that Benavides was really concerned about how his prior arrests would be viewed by the court on sentencing, rather than the Elavil matter, which was not raised with his counsel or otherwise until the morning of sentencing. Raising the matter that late, without prior notice to the court or the Assistant United States Attorney, also implicates to a limited extent concern for waste of judicial resources and inconvenience to the court, although these factors do not loom large in the present case. Crucially, there is no question of Benavides' being innocent or claiming innocence, and the district court was amply justified in finding that the plea was fully knowing, intelligent, and voluntary. In these circumstances, lack of prejudice to the government is not decisive.

Benavides has not met his burden of presenting a credible reason making withdrawal of his plea "fair and just," and the district court's denial of Benavides' motion to withdraw his plea was not an abuse of discretion.

*Motion to Suppress*

█ Since Benavides' guilty plea is valid, it constitutes a waiver of all "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Hen-*

derson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). *See also United States v. Diaz,* 733 F.2d 371, 376 n. 2 (5th Cir.1984). Hence, the acceptance of the May 13, 1985 guilty plea operated to waive all complaints as to the November 1984 denial of the motion to suppress. Benavides' complaints as to the denial of the motion to suppress are hence rejected.*

Accordingly, Benavides' conviction and sentence are affirmed.

**AFFIRMED.**

---

* Benavides' guilty plea was not conditional and did not reserve the right to appeal the suppression ruling, as authorized by Rule 11(a)(2) in instances where the government consents and the district court approves.

Moreover, concern about the suppression issue was never raised below after November

1984 and was never even mentioned in connection with the proceedings on the motion to withdraw the plea; nor has it been urged on appeal as being in any way related to the motion to withdraw.